## Diffenbach v. Diffenbach

*Edgar B. Bayley,* for petitioner.
*Nancy Diffenbach Armstrong,* pro se.

CALDWELL, *J.,* May 5, 1980—Petitioner, Nancy Armstrong (formerly Nancy Diffenbach), has filed a motion with this court which seeks to quash the request of respondent, Thomas E. Diffenbach, filed on February 29, 1980, that we conduct a hearing and redetermine a suitable visitation procedure.

We have entered three previous orders concerning the father's visitation rights. The original order was entered August 21, 1973, when all parties lived within the jurisdiction of this court. On August 27, 1976, we revised the provisions for visitation and on or about that date the petitioner and her children moved to Virginia, where they have since been bona fide residents. On April 27, 1977, we outlined additional procedures to be followed in exercising future visits, and at that time the mother and children resided in Norfolk, having gone originally to Virginia Beach in 1976. Since September 1979, petitioner (who is now remarried) and her children have resided in Richmond. Visitation difficulties have apparently again arisen, resulting in respondent's hearing request of February 29, 1980. Peti-

tioner has responded by filing a motion to quash, asserting that a Virginia state court is a more proper and convenient forum to determine future visitation rights with the children, under section 8 of the Uniform Child Custody Jurisdiction Act of June 30, 1977, P.L. 29, 11 P.S. §2308. The father asserts, to the contrary, that section 4 of the act, 11 P.S. §2304, vests this court with jurisdiction because Pennsylvania was the home state of the children at the time of the commencement of this proceeding.

After careful consideration of the act we believe that we no longer have jurisdiction over this case and that jurisdiction more properly lies with a court in the state of Virginia, to which the matter should be referred.

Section 2 of the Uniform Child Custody Jurisdiction Act, 11 P.S. §2302, provides, in pertinent part, as follows:

"(a) The general purposes of this act are to: (1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody . . . (2) promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child; (3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this State decline the exercise of jurisdiction when the child and his family have a closer connection with another state. . . ."

In light of the above purposes, respondent's interpretation of section 4 of the act is without merit.

The section reads, in pertinent part, as follows:

"(a) A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if: (1) this State: (i) is the home state of the child at the time of commencement of the proceeding; . . . (2) it is in the best interest of the child that a court of this State assume jurisdiction because: (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State; and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; . . . (4)(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child; and (ii) it is in the best interest of the child that this court assume jurisdiction. . . .'"

Respondent would interpret the phrase "commencement of the proceeding," in subsection (a)(1)(i) of section 4, to be limited to meaning the original proceeding held in a child custody case. Since Pennsylvania was the home state of the children when we issued our initial order it is argued Pennsylvania continues to retain jurisdiction over the parties. We believe that this interpretation is incorrect and would circumvent the above-quoted purposes of the act in that it would allow a state to continue to assert jurisdiction over a child long after that child had become a bona fide domiciliary of another state and where the second state could assert valid interests in the welfare of the child. The

better interpretation of subsection (a)(1)(i) avoids "jursidictional competition and conflict" by construing "commencement of the proceeding" to mean any particular proceeding that may be brought to establish or modify custody and not limiting the phrase to the initial hearing on custody.

This interpretation is bolstered by two other sections of the act. In section 3, 11 P.S. §2303, the act defines "modification decree" as follows: "A custody decree which modifies or replaces a prior decree, *whether made by the court which rendered the prior decree or by another court.*" (Emphasis supplied.) Thus, when section 4 empowers a court to issue a "modification decree," it contemplates situations when the court that made an original or prior decree is not involved, and the word "proceeding" can only be understood as referring to the current proceeding. Additionally, section 15 of the act, 11 P.S. §2315, empowers a court to modify the custody decree of a court of another state if it appears that the latter court no longer has jurisdiction determined substantially by the guidelines provided in the act.[1] It thus clearly appears that the legislature contemplated that jurisdiction over a child custody dispute may shift from state to state depending upon the jurisdictional prerequisites of the act.

Applying those jurisdictional guidelines to the instant case, we conclude that jurisdiction has at this point in time shifted to a state court in Virginia. The mother and two children have been living in Virginia since 1976 and there is no indication that their presence there is anything but bona fide. Hence, presently none of the jurisdictional pre-

---

1. The modifying court must also have jurisdiction itself. Id.

requisites of section 4 of the act are met in the instant case. Pennsylvania is no longer the home state of the children and since only one parent has a significant connection with this state it is not in the best interests of the children for Pennsylvania to assert jurisdiction in accordance with subsection (a)(2). Finally, since it appears that Virginia would have jurisdiction in accordance with the jurisdictional guidelines of section 4, we decline to continue to assert jursidiction in the instant case. See subsection (a)(4), 11 P.S. §2304(a)(4).

Respondent contends that we should accept jurisdiction since his petition does not request a modification of custody but only a clarification of his visitation rights. While it is true that the act speaks only of jurisdiction for custody matters, we believe that to draw a distinction for visitation issues would encourage the jurisdictional competition sought to be avoided by the act. The better interpretation leaves matters of visitation as well as custody to that court with jurisdiction as determined by the act.[2]

## ORDER

And now, May 5, 1980, respondent's motion to quash the petition is granted and the within matter is referred to the jurisdiction of the Chesterfield County (Virginia) Juvenile and Domestic Relations District Court, and counsel is directed to furnish said court with a copy of this order and other pertinent material from this proceeding.

---

2. See also section 3, 11 P.S. §2303, which defines custody determination as follows: "A court decision and court orders and instructions providing for the custody of a child, including visitation rights. . . ."